## NEIL McINTYRE *et al.*

### *v.*

## EPHRAIM STOREY.

1. CHANCERY — *jurisdiction.* Where there is a dispute between the owner of land and the town authorities as to whether there is a right of way for a public highway over such land, and the town authorities tear down the fences of the owner, and assert their right to do so, and their intention to continue to do so as often as he builds them up, and continuous litigation is kept up on account of the dispute, a court of chancery has jurisdiction in the premises upon a bill filed to enjoin the town authorities from opening the road claimed.

2. BURDEN OF PROOF *to establish highway.* On a bill to enjoin the defendants from tearing down the fence of complainant, where the defendants insist on their right to remove the fence because they are commissioners of highways, and the fence is an obstruction to a public highway, the burden of proving that there is a highway at the place where the fence is, is upon them.

3. EVIDENCE—*to prove existence of highway.* The record of a judgment recovered against a party in a suit by the town authorities for obstructing a highway, is not conclusive evidence of the existence of a public highway at the point in dispute, in a suit by the owner of land to enjoin such town authorities from opening a road over his land at the disputed point.

4. DEDICATION—*how proved.* A dedication for the right of way for a highway may be established by grant or written instrument, or by the acts and declarations of the owner of the premises. It may be inferred, from long and uninterrupted user by the public, with the knowledge and consent of the owner, but there must be a clear intent shown to make the dedication; the evidence should be clear, either of an actual intent so to do, or of such acts or declarations as will equitably estop the owner from denying such intent.

Appeal from the Circuit Court of Carroll county; the Hon. W. W. Heaton, Judge, presiding.

Messrs. Armour & Shaw, and Mr. J. M. Hunter, for the appellants.

Mr. M. Y. Johnson, for the appellee.

Mr. Chief Justice Scott delivered the opinion of the Court:

This bill was to enjoin defendants from opening through the premises of complainant what they insist is a public highway. Difficulty had previously existed in regard to the existence of a public road at the point in controversy. Defendants, or other parties, had torn down the fences, under pretense of opening to the use of the public the highway, and complainant had as often restored it. The town of Washington, in which the premises are situated, had prosecuted complainant under the statute for obstructing the highway, and in two civil suits, commenced for that purpose, had recovered the penalties imposed by the statute. Complainant had commenced a suit in trespass in the JoDaviess county circuit court, against the parties, for damages occasioned to his property by reason of the wrongful tearing down of his fences.

Defendants admit, in their answer, they had torn down and removed the fences of complainant, as charged in the bill. They allege, however, they are officers of the town, having charge of the public roads within its limits, and express a purpose to continue to remove any fences complainant may erect in or across what they claim to be a highway, as they say they have a lawful right to do.

The point is made, that chancery has no jurisdiction in the premises, and the remedy, if any, is at law. This position can not be maintained. If there is no highway at the point in controversy that the town officers may lawfully keep open for the use of the public, then the acts defendants admit they propose to do would constitute a continuing trespass, might cause irreparable mischief, perhaps lead to continuous strife in the

assertion and maintenance of what the parties may deem their respective rights, and ultimately produce serious breaches of the peace and acts of violence. The facts alleged constitute a clear ground for the intervention of a court of equity. Indeed, no complete remedy can be had at law. The jurisdiction of a court of equity in such cases is undoubted.

The principal facts appearing from the record out of which this controversy arose, may be briefly stated. Complainant alleges there never was any public road over his land where the fence was torn down, either by use, prescription, grant or dedication, or any legally laid out road. On the contrary, defendants aver a legal highway existed; that it was needed and much used; that it was a legal highway of the town at the time complainant built his fence in and across the same; that it had been a legal highway more than twenty years prior to such fencing up, and it has remained and now is such highway. This is the distinct issue made by the parties in their respective pleadings.

A large amount of testimony was heard on the trial. It was contradictory in the extreme, and much of it totally irreconcilable. We have examined the case with as much care as its importance demands, and shall simply state our conclusions from such examination, without attempting to comment upon all the evidence. It would be impracticable to do so without extending this opinion to an unreasonable length, and would serve no useful purpose if we should do so.

Admitting, as defendants do, the committing of the grievances complained of, and their purpose to continue the same acts, it would seem the burden is on them to show a justification for their conduct. This they have attempted to do by alleging they are public officers, and were removing obstructions from a public highway, as they had a lawful right to do. How the public acquired the right of way or an easement over complainant's land is not distinctly set forth. There is no pretense any public road was ever laid out and established by the proper authorities of the town or county, in the mode pointed out in the statute. It is a fair inference, from what is

9—80th Ill.

alleged in the answer, that the public acquired an easement over complainant's land by prescription or user for more than twenty years. But this position is not supported by any evidence in the case. It is conclusively shown, that prior to the time Gillett, the grantor of complainant, set his fence in one rod from the line, there had been no traveled road at the point where the fences were torn down. This was in 1865 or 1866. The condition of the ground, there being brush or trees upon it and a part of it swampy, would not admit of travel to any considerable extent. Under the evidence it can not be insisted, with any show of propriety, there had been a road at the point in dispute for twenty years, that had been used and traveled as a common highway.

The position, however, most strenuously maintained is, there was a dedication of the land for a public highway. Chiefly, defendants rely on a dedication of one rod of ground for the purposes of a road, made by Gillett, then the owner and in possession of the land, made at a time, as they say, when the settlements of the country began to interfere with the old traveled tracks or traces.

Waiving the question whether it is set up in the answer there had been a dedication of the right of way, and whether it is necessary to do so, we do not think it has been sufficiently proven there was any dedication of the land to the public for a road, or any acceptance on the part of the public authorities.

A dedication of the right of way for a highway may be variously proven. It may be established by grant or written instrument, or by the acts and declarations of the owner of the premises. It may be inferred from long and uninterrupted user by the public, with the knowledge and consent of the owner; but this court has had frequent occasion to say, there must be a clear intent shown to make the dedication. The evidence offered for that purpose should be clear, either of an actual intent so to do or of such acts or declarations as will equitably estop the owner from denying such intent. *Marcy* v. *Taylor*, 19 Ill. 634; *Kelly* v. *The City of Chicago*, 48 Ill. 388; *Godfrey* v. *City of Alton*, 12 Ill. 29.

On the question of the dedication of the one rod of land for the purposes of a highway, the evidence is certainly quite conflicting; but it is safe to say, the record does not contain that clear and satisfactory evidence of intention on the part of the owner to make a dedication of the land to public uses that the authorities cited seem to require. Gillett, himself, was examined as a witness, and says, that when he left out the rod of land, it was with no intention to dedicate it to the public for a road; that it was done for a temporary purpose, to accommodate parties residing in the vicinity, and that while at work upon the fences he declared his intention to persons who made inquiry, to close it up whenever he chose to do so. He is corroborated by other parties, who heard him make the same declarations at the same time. It is true that other witnesses say he expressed a clear and unequivocal intention to give the public the right of way to that extent over his lands, but we can not undertake to say the proof preponderates in favor of that theory of the case. Under all the circumstances in evidence, we think the court below was justified in finding, as a question of fact, that Gillett never made any dedication of this narrow strip of land to the public for a highway. The conduct of the public authorities, until quite recently, was not inconsistent with this view.

Great stress is laid on the fact that the town authorities, in two civil suits, recovered of complainant the penalties imposed by the statute for obstructing a highway at the point in controversy. We do not understand that the merits of this cause are in any degree affected by the result of the former litigation. The judgments in the former cases can not be considered conclusive evidence of the existence of the disputed highway, any more than a conviction in the trespass case brought against defendants would be conclusive evidence there was no highway. The result of the litigation in neither class of cases would determine the legality of the public road in question.

Where there is so much doubt as to the existence of the highway as the evidence shows there is in this case, it is always better the parties interested should procure the proper

town authorities to lay out the road anew, and condemn the right of way to the use of the public, to the end that vexatious and expensive litigation may be avoided.

Upon the whole record, we are of opinion the decree should be affirmed.

*Decree affirmed.*