JOHN HICKEY ET AL.

v.

THE CHICAGO & WESTERN INDIANA RAILROAD COMPANY ET AL.

1. RAILROADS—POWER TO CONSTRUCT IN CITIES.—Although the general railroad law confers upon each railroad company organized under it, authority to select its own route, and thereby to fix upon its terminal points, there is also a proviso contained in the act affecting its right to construct such railroad upon or across any street in any incorporated city without the assent of the corporation. This proviso is a limitation of power, and is an exclusion of such railroad from incorporated cities, except upon compliance with its conditions. Before such railroad can construct its tracks in or through an incorporated city, it must first obtain the consent of the common council of such city acting in a legal manner.

2. CONSENT—HOW OBTAINED.—Inasmuch as the railroad act contains no

Hickey v. C. & W. Ind. R. R. Co.

provision as to how such consent may be obtained, the action of the city council must be governed by the provisions of the general statute relating to the incorporation of cities and villages.

3. Power of city to regulate railroads.—Cities have full power to regulate the location and use of railroad tracks within their corporate limits. This is a public power or trust, and can be exercised by the corporation when and in such manner as it shall judge best, but such power cannot be delegated to others.

4. Ordinance must definitely fix the location and termini.— In granting consent to a railroad to locate its track upon or over the streets of a city, the functions of the city council are unquestionably legislative, and it devolves upon the council to prescribe the location of such railroad with reasonably definite lines; and if it fails so to do, but delegates to the railroad company itself a discretion in that respect, the ordinance is void upon its face.

5. Ordinance construed.—An ordinance granting permission to a railroad to "construct, etc., one or more tracks,  *   *   *   commencing at the southern boundary line of the city of Chicago, at some point within 100 feet of the west line of Stewart avenue, and thence northwardly  *   *   *   parallel to said avenue to its intersection with Grove street, thence  *   *   *   *   to such terminus as it may establish between the east bank of the south branch of the Chicago river and the west side of State street, and between Sixteenth street and the south line of Van Buren street," is void for indefiniteness.

6. Ordinance indivisible.—Although it may be said that the portion of the ordinance fixing the route from the southern line of the city to the intersection of Stewart avenue and Grove street is sufficiently definite (which is not conceded), yet the grant is single for the entire route, and the ordinance is indivisible, and cannot be sustained in any of its parts.

7. Delegation of authority.—The ordinance in question further provided that said railroad company might permit other railroad companies to use said railroad track "upon such terms as may be agreed upon by said companies." This delegation of power renders the ordinance void, because its exercise would result in a deprivation of the city of the control and regulation of a portion of its streets, by an abrogation of its functions.

8. Exercise of power—Conditions must be complied with.—The law requires as a condition of the exercise by the city council of the power to grant such assent, that there should be a petition therefor by the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes. A compliance with this condition is an essential prerequisite to a valid execution of the power.

9. Equitable jurisdiction.—The railroad company having no power to construct its track in a city except by consent of the city council, and such consent being void, a court of chancery has jurisdiction to restrain, by injunction, the railroad company from exercising such power.

10. Who may complain.—In a proceeding like this, there must be some

special injury shown by the complainants, and this is sufficient where the bill of complaint shows that the complainants are owners of land which the railroad company threaten to take for its own uses, but as to those complainants who state that their property "would be more or less injured" by the acts threatened, the bill fails to show facts sufficient to make a case.

11. PRACTICE IN CHANCERY.—Where a bill in chancery contains two distinct subject-matters wholly disconnected with each other, if one of them be clearly without the jurisdiction of a court of equity to redress, the better rule is, to treat the bill as if it were single, and proceed with the other matter over which it has jurisdiction as if it constituted the sole object of the bill.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding. Opinion filed March 29, 1880.

Mr. CHARLES H. MORSE, for appellants; that any ordinance is void which delegates to others powers which have been delegated by the legislature to the city council, cited Foss v. City of Chicago, 56 Ill. 354; E. St. Louis v. Wehrung, 50 Ill. 28; Lyon v. Jerome, 26 Wend. 585; Clark v. Washington, 12 wheat, 40; Coffin v. Nantucket, 5 Cush. 269; Buggles v. Nantucket, 11 Cush. 433; Municipality, No. 3 v. Ursuline Nuns, 2 La. An. 611; Thompson v. Schermerhorn, 4 N. Y. 92; 9 Barb. 152; 4 Cush. 433; Dillon on Mun. Corp. 180.

The ordinance being void, the construction or operation of the railroad within the city is a public nuisance: 2 Bouv. Law Dic. 245; 3 Black. Com. 216; Washburn on Easements, 2 C. & P. 485; 5 Esp. 217; Wahle v. Rheinbach, 76 Ill. 322; Cleveland v. Citizens' Gas Light Co. 5 C. E. Green, 205; Russ v. Butler, 4 C. E. Green; Springfield v. Conn. R. R. Co. 4 Cush. 71; Commonwealth v. Nashua & Lowell R. R. Co. 2 Gray, 56; Commonwealth v. Old Colony R. R. Co. 14 Gray, 93; 1 Haw. P. C. 197; 1 Strange, 686; 2 Chitty's Cr. Law, 607.

Where a nuisance is threatened, the remedy is by injunction: Dunning v. City of Aurora, 40 Ill. 481; Francis v. Schoelkopf, 53 N. Y. 155; Pierce v. Dart, 7 Cow. 609; Commonwealth v Old Colony R. R. Co. 14 Gray, 93; Commonwealth v. Nashua, etc. R. R. Co. 2 Gray, 56; Wahle v. Rheinbach, 76 Ill. 322; Bliss v. Kennedy, 43 Ill. 67; Town of Lake View v. Letz, 44 Ill. 81; Kerr on Injuctions, 339; Waterman's Eden on Injunctions, 259; Wood on Nuisance, 812.

An injunction will be granted to prevent a railroad from exceeding its powers: Cobb v. Ill. & St. L. R. R. Co. 68 Ill. 233; Dun River Nav. Co. v. North M. R. R. Co. 1 Eng. R. Cas. 135; Hyde v. G. W. R'y Co. 1 Eng. R. Cas. 567: Sandford v. Railway Co. 24 Penn. 378; Gordon v. P. W. & B. R. R. Co. 3 Whar. 502; Morehead v. Little Miami R. R. Co. 17 Ohio 340; Pullman v. Mayor of New York, 49 Barb. 57; Oakey v. Trustees, 6 Paige's Ch. 262; Milhan v. Sharp, 15 Barb. 193; Dillon on Mun. Corp. § 561.

An injunction will be granted to prevent a multiplicity of suits: Swift v. Larrabee, 31 Conn. 225; Crews v. Burcham, 1 Black. 352.

The bill is not multifarious: Fellows v. Fellows, 14 Cow. 682; Ward v. Duke of Northumberland, 2 Ansth. 469; Story's. Eq. Pl. § 284.

Mr. HENRY CRAWFORD, for appellees; that the bill of complaint is multifarious, cited Hudson v. Madison, 12 Sim. 416; Hinchman v. Patterson, Horse R'y Co. 17 N. J. Eq. 82; Story's Eq. Pl. §§ 279, 554.

The railroad company was seeking to exercise the right of eminent domain, and a court of equity cannot interfere with condemnation proceedings when those interested are before the court: C. R. I. & P. R. R. v. Town of Lake, 71 Ill. 333; Dunham v. Hyde Park, 75 Ill. 371; Aurora R. R. Co. v. Miller, 56 Ind. 88; Cal. Pacific R. R. Co. v. Cent. Pacific R. R. Co. 47 Cal. 549; Deidricks v. N. W. U. R. R. Co. 33 Wis. 219.

An owner whose property is not physically appropriated or injured, cannot enjoin or recover damages for injuries merely consequential: Stetson v. C. & E. R. R. Co. 75 Ill. 74; Patterson v. C. D. & V. R. R. Co. 75 Ill. 588; Stone v. F. P. & N. W. R. R. Co. 68 Ill. 394; C. B. & Q. R. R. Co. v. McGinness, 79 Ill. 269.

The consent of the city is a mere license: Chicago City R'y Co. v. The People, 73 Ill. 541; W. D. R'y Co. v. Met. R'y Co. 87 Ill. 317.

Complainants cannot raise the question of validity of the ordinance in this proceeding: Yates v. Batavia, 79 Ill. 500.

The judgment of the railroad company as to the location of

its route, when exercised in good faith and not oppressively, cannot be controlled by other authority: C. B. & Q. R. R. Co. v. Wilson, 17 Ill. 123; C. R. I. & P. R. R. Co. v. Joliet, 79 Ill. 25; C. R. I. & P. R. R. Co. v. Lake, 71 Ill. 333; Marsh v. F. P. & N. W. R. R. Co. 64 Ill. 414; Bestor v. Wathen, 60 Ill. 138; St. L. J. & C. R. R. Co. v. Mather, 71 Ill. 592.

The law does not require any precise location: Heuline v. The People, 81 Ill. 269; Chamberlain v. C. B. & Q. R. R. Co. 84 Ill. 338.

The control of this question is left with the city council, and the court cannot annul its legislative act: Mason v. Shawnee-town, 77 Ill. 337; Bond v. City of Newark, 10 N. J. Eq. 377; Brush v. Carbondale, 78 Ill. 74; Chicago Packing Co. v. Chicago, 88 Ill. 225.

The court will not interfere on behalf of one who claims relief not through equities of his own, but of other parties, who do not themselves insist upon them: Att'y Gen. v. U. K. Elect. Tel. Co. 30 Beat. 287; Roberts v. Bozon, 3 L. J. 113; Kerr on Injunctions, 207.

The wrong is a public one, and must be redressed by a public prosecution: Fall River I. W. Co. v. O. C. & F. R. R. R. 5 Allen 223; Bigelow v. Hartford Bridge Co., 14 Conn. 565; Dunning v. Aurora, 40 Ill. 481; Bliss v. Kennedy, 43 Ill. 67; Lake View v. Letz, 44 Ill. 81.

McALLISTER, J. This is an appeal from the decree of the circuit court of Cook county, sustaining a demurrer to, and dismissing out of court for want of equity, appellant's bill in equity, brought by them as the owners of real estate in the city of Chicago about to be taken or specially damaged thereby; to restrain by injunction the Chicago & Western Indiana Railroad Company and others from constructing a railroad, to be operated by steam power, over and near said lands within the city of Chicago; the bill showing that said railroad company was incorporated under the general railroad act of 1872, and claims the right to construct and operate such road in said city under the provisions of said act, and an ordinance of the city council of Chicago passed Sept. 8, 1874, which latter upon grounds stated in the bill is alleged to be null and void.

The principal questions are, whether said railroad company possessed the power to construct said road in the city, by virtue of said statute.   If not, then, whether it was conferred by said ordinance; the ultimate question being, whether the act threatened to be done under claim of right, was not in fact and in law, without or beyond the legal powers of said railroad corporation to do.

These questions will be considered in their natural order.

Whether such a power of running into any incorporated city or village, and establishing its terminus therein at its own pleasure, is given to it by the general railroad act, is a question which may be disposed of in few words.

It is true, Sec. 20 (R. S. 1874, p. 803) confers upon each railroad company organized under that act, authority to select its own route, to lay out its road, not exceeding one hundred feet in width, and to construct the same.   This power carries with it as a necessary incident, that of fixing the terminal points, and if there was no limitation in the act, the railroad company might as a general rule, establish such points anywhere, according to its discretion.   But the same section contains the proviso: "That nothing in this act contained shall be construed to authorize the construction of any railroad upon or across any street in any city, or incorporated town or village, without the assent of the *corporation* of such city, town or village."   This proviso is, in terms, a restraint upon the powers of such corporation to construct its railroad where it pleases; for our common knowledge teaches us that no railroad could be proceeded with any considerable distance in a city, without coming to a street.   So that proviso operates not only as a limitation of powers, but as a practical exclusion of such railways from incorporated cities, except upon the condition of obtaining the consent thereto, not of some of the officers, executive or ministerial, but of the corporation of such city; which can only be through the action of the city council within the powers conferred upon that body.

Inasmuch as the general railroad act contains no provision as to how such consent is to be obtained, but impliedly authorizes the construction of a railroad within any incorporated

city, when, where and in such manner as the corporation of
such city shall prescribe; the provisions of the general rail-
road act must, in this respect, be taken to be *in pari materia*
with those of the general statute for the incorporation of cities
and villages, passed at the same session, though at a date
later than that of the railroad act; and this brings us to the
second question, whether the ordinance of Sept. 8th, 1879, pur-
porting to give such consent to the railroad company in ques-
tion, was a valid exercise of the powers conferred and the du-
ties imposed upon the corporation of Chicago, acting under
and governed by the provisions of the general incorporation act
of 1872.

Section 62 of the last mentioned act (R. S. 1874, p . 218) con-
tains definite specifications of all the powers conferred upon the
city council, and winds up by the following: "To pass all or-
dinances, rules, and make all regulations, proper or necessary,
to carry into effect the powers granted, with such fines or pen-
alties as the city council shall deem proper; provided no fine
or penalty shall exceed $200, and no imprisonment shall exceed
six months." Specification 7 gives to the council the power
to lay out, establish, open, alter, widen, extend, grade, pave,
etc., streets, alleys, avenues, sidewalks, etc., and vacate the
same. 9. To regulate the use of the same. 10. To prevent
and remove encroachments or obstructions upon the same.
24. "To permit, regulate, or prohibit the locating, construct-
ing or laying a track of any horse railroad in any street, alley,
or public place; but such permission shall not be for a longer
time than twenty years." These provisions all relate to the
streets, alleys, etc., and confer a plenary power of control,
subject to the limitation respecting horse railroads. The next
specification is of broader scope, and very material to the case
under consideration: 25. "To provide for, and change the
location, grade, and crossings of any railroad."

The power here given goes beyond that of regulating the use
of streets and public places by railroads. This is clearly shown
by the language employed. It is not only to provide for the
grade and crossings, which means street as well as railroad
crossings, but for the location of any railroad. The word "loca-

tion" has a well understood meaning at common law.   "It is often applied," says Bouvier, " to denote the act of selecting and marking out the line upon which a railroad, canal or highway is to be constructed."   2 Bouv. Law Dict. 80.   That is clearly the sense in which it is used in the clause under consideration; and it is a police power of the greatest importance and usefulness for the security of life and limb, as well as property, in a large city like Chicago; and, in fact, in any incorporated city or village.   All the powers conferred by the several specifications under section 62, upon the city council, are powers devolved by law upon that body in trust for the benefit of the public; and the principle is firmly established, that the public powers or trusts devolved by law or charter upon the city council, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others.   Dillon on Munic. Corp. § 60, and cases in notes.   The City of East St. Louis v. Wehrung, 50 Ill. 28; Foss v. City of Chicago, 56 Ill. 354; Bibel v. The People, 67 Ill. 172.

In each of these cases it was held that an ordinance which purported to delegate to others powers which the law devolved upon the corporation, or its council or governing body, was illegal and void.

Cooley says: " Another and very important limitation which rests on municipal powers is, that they shall be executed by the municipality itself, or by such agencies or officers as the statute has pointed out.   So far as its functions are legislative, they rest in the discretion and judgment of the municipal body intrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates, or of any other authority."   Cooley's Const. Lim. 204.

The functions involved in providing for the subject-matter of the ordinance under consideration, were unquestionably legislative, and the law demanded that the council should prescribe the location of the railroad with reasonably definite lines.   If, therefore, the city council did not, in and by said ordinance, prescribe the location of the proposed railroad with reasonably definite lines, but delegated to the railroad company itself a discretion in that behalf, the ordinance is void upon its face.

By the first section of that ordinance, it is ordained "that permission and authority be, and the same is, hereby given and granted to the Chicago & Western Indiana R. R. Co. to lay down, maintain and operate a railroad with one or more tracks, and such switches, sidings, and turn-outs as may be necessary, along and upon the following route in the city of Chicago, to wit: Commencing at the southern boundary line of the city of Chicago, at some point within 100 feet of the west line of Stewart avenue, and thence northwardly, over such lots, lands and property as the said company now owns or hereafter may acquire by lease, purchase or condemnation, or otherwise, parallel to said Stewart avenue, to the intersection of Grove street and said Stewart avenue; and thence over and upon such lots, lands and property as the said company now owns, or hereafter may acquire by lease, purchase, condemnation or otherwise, unto such terminus as it may establish between the east bank of the south branch of the Chicago river, and the west side of State street, and between Sixteenth street and the south line of Van Buren street."

While this ordinance professes to make a location of the proposed railroad, it in fact delegates the whole matter to the discretion of the railroad company. The only feature approximating definiteness is, that the starting point in the south city boundary line may be within 100 feet of the west line of Stewart avenue. That is definite into 99 feet. But there is no attempt to fix the northern terminus, and full discretion is given to the railroad company to establish one anywhere between the east bank of the south branch of the river and the west line of State street, and between Sixteenth and the west line of Van Buren street; an area equivalent to several hundred acres in the very heart of a populous city, which is thus exposed to the corporate raids of incorporated adventurers, as their selfishness, malice, or caprice may dictate. If such an ordinance can be held valid under the general incorporation act for cities and villages and the principles of the common law, then the supposed sanctity of individual rights of property in Chicago is something worse than a mere barren abstraction; it is a delusive sham—an encouragement to communism.

It seems to us that no man actuated by a proper sense of justice, or by a proper regard for the rights of others, would, under our system of laws, ask for or accept such a power, so utterly antagonistic to the proper police powers and true theory of municipal government; especially when he must have known that the granting it would be a flagrant breach of public trust on the part of the city council.

It is claimed that the location of the portion from the southern limits of the city to the intersection of Stewart Avenue with Grove street, is sufficiently definite, and to that extent, the ordinance is good. · We do not think so; but conceding that it is, the route is an entirety. The grant is single for the entire route. It is the same in principle as the case of People v. Evans, 18 Ills. 361. There, the legislature in creating a Recorder's Court for the cities of La Salle and Peru, extended the jurisdiction for several miles outside those cities, when the Constitution required it to be within them. The court said: " We should have been willing to have obviated the objection to the law by holding that by the provision of the Constitution, the territorial jurisdiction of the court should be limited to the city limits and to that extent sustain the court, could we have fairly done so. Were the extension of the jurisdiction beyond the city limits contained in a separate clause, so that the unauthorized part of the law could be separated from that which is authorized, we might possibly have held that part alone unconstitutional. But here we find one broad grant of jurisdiction to the entire territory of the two towns, without any reference to the city limits whatever." And the court held the whole grant void.

So here we find one broad grant of the entire route, and if, as to some portion of it, the location were sufficiently definite and the grade and crossings provided for in the ordinance, which are not, we could not uphold that and reject the residue. But we do not regard any part of the location as sufficiently definite. Too much latitude of discretion is given (and it is an illegal delegation of power) to be consonant with individual rights in a populous city, or the spirit and intent of the statute, which stands as the fundamental law of the municipal corporation, beyond whose specific enumeration of powers and their nec-

sary implications, the council cannot go one inch.    Sec. 2 of the ordinance declares that: " Said railroad company may cross any and all intervening streets, alleys and railroad tracks up-on *or along the line of said route,* or designated in the first section, said company to be subject at all times to the direction of the department of public works, or other proper department or offices of said city in the construction of its said tracks in making the crossings or connections with other roads."

Here, again, in attempting to confer the right of crossing all intervening streets and alleys, and railroad tracks upon or along the line of said route, the route is treated as an entirety; and there is a manifest delegation of authority to select the place of crossings and the manner of construction, including, necessarily, the grade; both of which the law required should be provided for by the city council.

Section 3 authorizes (so far as the council could) the railroad company " to lay down, maintain and operate one or more railroad tracks, with such turnouts, sidetracks and switches *as it shall deem necessary,* over and across any land which it may acquire upon the line of said route, by lease, purchase, condemnation or otherwise," and *to operate the same with locomotive engines,* etc.    Here, again, the route is treated as an entirety, and it unquestionably is such.    Linblom v. Ramsey, 75 Ill. 249, where a proposed road was regarded as an entirety.

If the provisions of that third section were lawful, they would authorize the railroad company in its discretion, to occupy the entire area of hundreds of acres in the heart of the city, devoted by the first section to its unrestrained ravages north of Grove street.

But this is not all.    The seventh section of the ordinance contains a provision, that the privileges granted by the first section, are upon the express condition that the Chicago & Western Indiana R. R. Co. shall permit any other railroad companies, not exceeding two in number, that have not at present any right of entrance into the city of Chicago, to use said main railroad tracks, therein authorized to be laid, jointly with said Chicago & Western Indiana R. R. Co., upon such terms as may be agreed on by said companies.    If the companies cannot

agree, then these railroad companies may choose arbitrators, and the terms fixed, by such arbitrators " shall be the terms and conditions upon which said companies respectively shall use and occupy said tracks." The bill shows that said route will traverse from the southern limits of the city to the intersection of Stewart avenue and Grove street, eleven of the streets of the city. Just how many it will go upon by the rambling authority given to it northward from such intersection, cannot be judicially known, because the matter is left entirely to the discretion of the railroad company.

The provision in the seventh section is not a license or act of legislation. It purports to authorize the Chicago and Western Indiana R. R. Co. to contract with any two other companies, with no limitation as to their character, except t that they are such as, at that time, had no right to enter the city, for the use of the main tracks, upon such terms and conditions as may be agreed upon between them, without power of revocation or limitation as to time. The authority is broad enough to authorize a contract which will be exclusive of all control on the part of the city. Such a power delegated to a railroad corporation cannot but be void under the fundamental law governing the city of Chicago, because, if valid, it would result in a deprivation of the city, of the control and regulation of a portion of its streets, by an abrogation of its functions. These questions were ably argued, and were decided in the leading case of Davis v. Mayor, etc. of New York, 14 N. Y. 506. In that case, Comstock, J., said: " Taking the whole ordinance together, it is no less than an abrogation by the common council of their powers and duties over and concerning public streets, and a surrender of a considerable portion of those powers and duties into the hands of private individuals or a private corporation. This the corporation of New York cannot do. Time and experience may give a very unfavorable solution to the question whether this railroad, or any railroad in Broadway, can be beneficial to the public; but the hands of the city government will be tied by the contract into which it has entered, and future change and improvement may be prevented by the voluntary surrender—in effect, in perpetuity—of its own powers. On

this ground the ordinance is void." This view, which is undoubtedly sound, was approved by the same court in subsequent cases. Milhan v. Sharp, 27 N. Y. 611. Coleman v. Railroad Co. 38 Ib. 201. Dillon on Munic. Corp, § 567.

Under section 62, *supra*, of the City Incorporation Act, is the following: " The city council or board of trustees shall have no power to grant the use of, or the right to lay down any railroad tracks in any street of the city, to any steam or horse railroad company, except upon a petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes." Rev. Stat. 223.

The bill alleges, and it is admitted by the demurrer, that no petition of property owners was presented to the council as required by this provision, before the passage of the ordinance, at the same time or since. It is unnecessary to cite authorities to show that the condition to the exercise of the power prescribed by the statute must be complied with is an indispensable prerequisite to a valid execution of the power. It is insisted, however, by appellee's counsel, that this provision has no application to a case where the railroad tracks are laid cross-wise; that it applies only when they are laid lengthwise. If that had been the intention, it seems to us the legislature would, instead of the word " in," have used the words " upon and along," or " along." It would clearly apply to a curvature into a street, because the last clause is " representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes." By section 2 of the ordinance, " The said railroad company may cross any and all intervening streets, alleys and railroad tracks, upon or along the line of said route." Clearly by this they were authorized not only to curve into, and for necessary distances, run along a street.

It is unnecessary to discuss this question further, because the ordinance is clearly void upon the grounds of a delegation by the council of powers confided by the law to that body in trust, and the authority purported to be given as a condition upon which all the privileges were granted, that the railroad company mentioned in the ordinance, should contract with other

companies for the use of the tracks, upon such terms as such companies might agree upon, without reserving to the city any power of revocation or alteration, and without limitation as to time; thus providing for the abrogation of some of the powers of the city council so held in trust for the benefit of the public.

The railroad company having no power under its own charter to construct its railway in the city of Chicago without the consent of the latter, given in conformity with its own charter, and the consent relied upon being void, it therefore follows that said railroad company is proposing and threatening to do the acts complained of without, or in excess of its powers.    In such a case a court of equity has jurisdiction to interpose by injunction.    As early as the case of Smith v. Bangs, 15 Ill. 400, the Supreme Court, by Treat, C. J., laid down this rule: " So a court of equity has jurisdiction to interpose by injunction where public officers, under a claim of right, are proceeding illegally to impair the rights or injure the property of individuals or corporations, or where it is necessary to prevent multiplicity of suits." Citing The Mohawk & Hudson R. R. v. Artcher, 6 Paige, 83; Oakley v. The Trustees of Williamsburgh, Ib. 262; Belknap v. Belknap, 2 Johns. C. R. 463; Frewin v. Lewis, 4 Mylne & Craig, 249.    It is so where such officers assume the right, but act without authority of law, or in excess of such authority.    Drake v. Phillips, 40 Ill. 393; Town of Ottawa v. Walker, 21 Ill. 605; Carter v. Chicago, 57 Ill. 283.

The same rule applies to local officers acting without or in excess of the authority of law, in the opening of roads.    McIntyre v. Storey, 80 Ill. 127; Frizell v. Rogers, 82 Ib. 109.

The same principles apply to private corporations acting under authority of law.    In the case of Cobb v. I. & St. L. R. R. & Coal Co. 68 Ill. 235, Mr. Justice Walker, in an excellent opinion, says: " Again, the laying a track on his land and maintaining it there, is a permanent injury, and when used for the purpose of continually removing his soil and sand, becomes a nuisance, and must produce irreparable injury.    But in cases of this character courts of equity have acted on broader principles, and have adopted as a rule that an injunction will be

granted to prevent a railway company from exceeding the powers granted in their charter. River Dun Nav. Co. v. North M. Railway, 1 Eng. R. Cases, 135; Hyde v. Great Western Railway, Ib. 567; Agar v. Regents Canal Co. Cooper's R. 77. The courts do not require, where the effort is manifested by a railway company to wrongfully appropriate property or force their structures to places not authorized, that there should be a want of remedy at law." And the court proceeds: "In Sanford v. The Railway, 24 Penn. R. 378, it was said: If corporations go beyond the powers which the legislature has given them, and in a mistaken exercise of those powers interfere with the property of individuals, the court is bound to interfere by injunction, or otherwise, as the case may require."

In a standard work is the following: "In regard to injunctions affecting railway companies, courts of equity have declined to assume the control of railway construction. But such companies may be restrained from taking land after their statutory powers have ceased, and from doing other acts exceeding their powers." 2 Story's Eq. Jur. (Perry's Ed.) § 1555.

The bill in this case contains some eighty-two complainants. This multiplicity of plaintiffs, while it tends to obscure the merits and embarrass the remedy, was dictated doubtless by the fear of the suit being quietly disposed of by settlement with plaintiffs, if there were but few of them. As to thirty-five of these plaintiffs, the bill shows, by its statements, their ownership, respectively, of real estate which the railroad company proposes under said ordinance to take and enter upon; or which is so located as to be specially injured by the construction of the railroad within the city under said ordinance. As to these, the bill shows a clear case for the interposition of equity by injunction, on the ground that the act threatened would be in excess of the power of the corporation; the entry upon plaintiffs' lands would not be a mere trespass, but a continuing permanent injury to the owners of land to be taken, and those whose premises were so situated as that they would receive special injury from the construction of the railroad, are equally entitled to the relief sought. As to the other plaintiffs, in respect to whose property they "would be more or less injured,"

we do not think the bill shows any case.   There must be some special injury.   Milhan v. Sharp, *supra;* and this must be shown by facts stated.

The bill, although it prays that said ordinance be declared void, is, a mere bill for an injunction.   Weaver v. Poyer, 70 Ills. 597.   It was demurred to for multifariousness and want of equity.   The court sustained the demurrer; but the record does not disclose on what ground.   This was a mere interlocutory order.   No opportunity, so far as the record shows, was given plaintiffs to amend by striking out the names of part of the plaintiffs, but the court dismissed the bill for want of equity.   We think the bill as to the thirty-five plaintiffs, made a case for an injunction.   It was argued by appellee's counsel, that the joinder of several plaintiffs who owned land in severalty, necessarily made the bill bad for multifariousness.   We do not agree with the learned counsel.   As stated before, the bill was solely for an injunction.   The injury against which relief was sought, was identically the same as to all the plaintiffs; and it was asked upon the same ground.   Whatever the rule may be in other states, in this state it is settled that if several property owners seek relief against the same injury upon the same ground, a bill in which they join as plaintiffs will not be regarded as multifarious.   Harward v. St. Clair Drainage Co, 51 Ills, 130; re-affirmed in Carbon Coal Co. v. Blanchard et al. 54. Ills. 241.   The bill was therefore well brought as to all plaintiffs whose land was about to be taken or suffer special injury by the construction of the said railroad within the city.   As to the other plaintiffs, no case is stated within the jurisdiction of the court, though they asked relief against the same injury upon the same ground.   It is true, that a bill is ordinarily open to the objection of multifariousness which contains two distinct subject-matters, wholly disconnected with each other, but that is not this case, yet even in that case, if one of them be clearly without the jurisdiction of a court of equity to redress. the better rule is, that the court will treat the bill as if it were single, and proceed with the other matter over which it has jurisdiction, as if it constituted the sole object of the bill.   Story's Eq. Pl. Sec. 283.   Krye v. Moore, 1 Simons & Stuart, 61; Dew

v. Clark, Ib. 108; Varick v. Attorney-General, 5 Paige, 137, 160; Pringle v. Cook, 3 Younge & Coll. 660.

Being of opinion that the court below erred in dismissing the bill for want of equity, that decree will be reversed, and the cause remanded for further proceedings.

Reversed and remanded.