## The City of Bloomington

### *v.*

## The Bloomington Cemetery Association.

*Filed at Springfield September 27, 1888.*

1. BOUNDARIES—*division lines, by parol agreement.*   It is competent for the owners of adjoining lands to adopt the line established by a prior survey, as their division line, and if they do so adopt any such line, whether the correct one or not, by unequivocal acts, from which an agreement may be implied, and fence with reference thereto, they will be conclusively bound by their agreement, and thereafter estopped from disputing such line.

2. While title to real estate can not be transferred by parol, yet the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession according to the line so agreed upon, such fixing of the division line will be binding and conclusive, not only upon them, but upon their grantees.

3. DEDICATION—*of the proof required.*   A dedication of private property to public uses will not be held to be established except upon clear and satisfactory proof, either of an actual dedication, or of such acts or declarations as will equitably estop the owner from denying such intention.

4. Unless a land owner, by some unequivocal overt acts or declarations given of his intention to have a strip thereof included in a street, and thereby inducing the public to use and a city to improve the same as part of the street, he will not be estopped from denying a dedication. Mere non-action will not raise an implication of an intention to dedicate private property to public use, nor will it estop the owner to deny such intention.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. A. E. DEMANGE, for the appellant:

A verbal agreement between adjoining owners, that a certain line shall be the boundary between their possessions, does not make title to any land not embraced within their respective paper or other titles, but simply settles the question of boundary between them, entitling each to possession up to the agreed line. Such possession can not ripen into title until held for twenty years. Plaintiff, under its own evidence, held such possession only from 1858 to 1868, and it is so recited in the judgment, and the court so held in the first proposition. Hence plaintiff's evidence does not fit the declaration which claims in fee simple, and does not support the judgment. *Cutler* v. *Callison,* 72 Ill. 113; *Crowell* v. *Maughs,* 2 Gilm. 419; *McNamara* v. *Seaton,* 82 Ill. 500; *Hubbard* v. *Stearns,* 86 id. 35.

The boundary between adjoining owners may be settled by parol, but the agreement must be clearly proven, and must have been followed by continuous possession up to the agreed line. *Yates* v. *Shaw,* 24 Ill. 369; *Darst* v. *Enlow,* 116 id. 475.

The acts of the party in fencing out the strip and permitting the city to take possession of and improve the property, ought to estop the party from setting up against the city a better claim, if it had one. *Chicago* v. *Wright,* 69 Ill. 318; *Smith* v. *Town of Flora,* 64 Ill. 95; Dillon on Mun. Corp. (3d ed.) secs. 631, 632; *Field* v. *Carr,* 59 Ill. 198.

Mr. E. M. PRINCE, and Messrs. FIFER & PHILLIPS, for the appellee:

When Graves, owning the land on the north side of the half-section line, and McClun, owning that on the south side, settled and agreed upon the boundary line between their lands, and respectively took possession thereof up to the agreed line, they became estopped from asserting any other or different

line as the half-section line.   *Yates* v. *Shaw,* 24 Ill. 367;
*Bauer* v. *Gottmannhausen,* 65 id. 499; *Kerr* v. *Hitt,* 75 id. 60.

Such a line is conclusive, not only between the contracting
parties, but upon their grantees.   *Cutler* v. *Callison,* 72 Ill.
115.

To effect a dedication, there must have been an intention
on the part of appellee to dedicate the land to public uses.
*Marcy* v. *Taylor,* 19 Ill. 636; *Rees* v. *Chicago,* 38 id. 323.

If acts of the appellee are relied on to prove a dedication
by way of estoppel, they must be such as are unequivocal,
and admit of no other explanation.   *Gentleman* v. *Soule,* 32
Ill. 280; *Kelly* v. *Chicago,* 48 id. 390; *Chicago* v. *Johnson,* 98
id. 624.

Estoppels must be certain to every intent, (1 Herman on
Estoppel, 10,) and can only be allowed to prevent fraud and
injustice.   *Thomas* v. *Bowman,* 29 Ill. 429.

Mr. JUSTICE BAILEY delivered the opinion of the Court: ·

This was an action of ejectment, brought by the Blooming-
ton Cemetery Association against the City of Bloomington, to
recover a tract of land situate in the county of McLean, and
described as follows:   Commencing on the half-section line
running east and west through section 9, township 23, north,
of range 2, east of the third principal meridian, at a point five
chains east of the center of said section, being the same point
where stood the west end of a fence built about the year 1858
as the boundary line between the lands of Linus Graves and
John E. McClun, thence north thirteen feet to a fence built
by the plaintiff about the year 1868, thence south-easterly
along said fence to a point where said fence intersects said
half-section line, thence west on said line to the place of be-
ginning.   From this description it will be seen that the land
in controversy is a triangular or wedge-shaped tract thirteen
feet wide at the west end and running to a point at the oppo-

site end, and having for its northern boundary a certain fence and for its southern boundary what is claimed to be the half-section line.

The plaintiff, at the trial, proved title in itself from the United States, through several *mesne* conveyances, to a part of the west half of the north-east quarter of said section 9 abutting upon said half-section line, and which includes the land in controversy, provided the true location of said line is as the plaintiff claims.

It appears that as early as 1851, competent surveyors who were employed to survey and fix the boundaries of various portions of said section 9, located the center of said section and placed a stone there as a monument to mark the spot. A line drawn from the center of the section as thus fixed to the quarter section corner on the east line of said section, runs along the south line of the land in controversy. The evidence shows that, for many years subsequent to the year 1851, the quarter-section line thus established was recognized, not only by the surveyors, but by the various property owners whose land abutted thereon, as the true line. In 1855 or 1856, Linus Graves, the plaintiff's immediate grantor, was the owner of the land in the west half of the north-east quarter of said section now owned by the plaintiff, and John E. McClun was the owner of the adjoining land in the west half of the south-east quarter of said section. Graves, as the evidence tends to show, being about to erect a fence on the line between said tracts, had a conversation with McClun in respect to the location of the line, and it was thereupon understood and agreed between them that their division line was and should be the line theretofore established by the surveyors, and Graves accordingly erected a high board or plank fence along said line and maintained the same as a division fence until some time in the early part of the year 1869. In December, 1868, McClun platted his land south of the quarter-section line into lots, blocks and streets, thus forming what is known as McClun's

Third Addition to the city of Bloomington.    By said plat the land immediately adjacent to the quarter-section line was laid out as a street fifty feet in width, known as Lincoln street, the quarter-section line being the north line of the street.    Not long after the addition was platted, Graves took down his line fence and re-erected it on a line farther north.    The witnesses differ as to the exact distance the fence was moved, but the preponderance of the evidence seems to show that the new line was thirteen feet north of the old at the west end, and run thence so as to intersect the old line at or near the south-east corner of the west half of the north-east quarter of the section.

The evidence as to Graves' motives for changing the location of the fence is somewhat conflicting.    His explanation of the change is, that the fence having become out of repair, he was much annoyed by people tearing off the boards and carrying them away at that point, and that to lessen such interference with the fence he set it back thirteen feet at the west end, and intended to put an extra fence outside.    Other witnesses testify that he said at the time that he was changing the location of the fence for the purpose of straightening his line.

Lincoln street does not seem to have been very much traveled prior to 1884, and there is no evidence that the city of Bloomington attempted to grade or improve it until that year. During that and the following years the municipal authorities of the city undertook to grade the street, and in doing so they seem to have assumed that the fence as it then stood was on the north line of the street, and graded the street accordingly. A brick sidewalk was constructed on the south side of the street and so located as to leave the street only fifty feet wide measuring to the fence, and a gutter was dug on the north side of the street parallel with the fence and about seven feet therefrom.    Buildings were erected and other improvements made on the south side of the street and located with reference to the line of the sidewalk.

15—126 ILL.

Since the present controversy arose, new surveys of section 9 have been made which locate the center of the section a sufficient distance north of the point where it was located by the earlier surveys, to bring the quarter-section line several feet north of the fence as it now stands. This disagreement between the old and new surveys is to be explained in this way: The quarter-section corner on the north side of the section, as established by the government surveyors, is located for some reason a considerable distance south of a direct line drawn between the north-east and north-west corners of the section. The evidence tends to show that, by the system of surveying universally prevalent in McLean county up to a comparatively recent period, the center of a section, especially where there was any irregularity in the external boundary of the section, as in this case, was located at a point equi-distant from the opposite quarter-section corners, thus distributing the excess or deficiency in the section equally among the several quarter-sections. The more recent surveys were made in pursuance of the provisions of the act of Congress now in force which directs that "the boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners." Rev. Stat. of U. S., sec. 2395. Of course the latter mode of surveying necessarily located the center of section 9 north of the point at which it was located by the former mode, by one-half the distance between the quarter-section corner on the north line of the section and a straight line drawn between the north-east and north-west corners of the section.

If it be conceded that the earlier surveys were erroneous, it was competent for the adjoining land owners to adopt the line which those surveys established as their division line, and after having done so by unequivocal acts from which an agreement may be implied, and especially, as the evidence tends to show in this case, after an express agreement adopting such division line, they are conclusively bound by their agreement, and are

estopped from insisting upon another and different line. It has been held that when parties agree upon a boundary line and enter into possession according to that line, they are thereby concluded from afterwards disputing that it is the true line, even where the statute of limitations has not run. *Yates* v. *Shaw*, 24 Ill. 367; *Bauer* v. *Gottmanhausen*, 65 id. 499; *Kerr* v. *Hitt*, 75 id. 51; *Crowell* v. *Maughs*, 2 Gilm. 419; *Smith* v. *Hamilton*, 20 Mich. 433. "While it may be regarded as settled that the title to real estate can not be transferred by parol, yet it is a principle well established, that the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession according to the line so agreed upon, is binding and conclusive, not only upon them, but upon their grantees." *Cutler* v. *Callison*, 72 Ill. 113.

But it is insisted that the city obtained title to the land in question by dedication. A dedication of private property to public uses will not be held to be established except upon clear and satisfactory proof, either of an actual dedication, or of such acts or declarations as should equitably estop the owner from denying such intention. *McIntyre* v. *Storey*, 80 Ill. 127; *City of Chicago* v. *Johnson*, 98 id. 618.

There is no evidence, or at least none which is at all clear or satisfactory, that Graves, at the time he moved his fence, intended to dedicate or abandon to the public the strip of land he thus excluded from his inclosure. If he moved his fence as the testimony of some of the witnesses would seem to indicate for the purpose of straightening his line, his intention, so far at least as the question of dedication is concerned, was altogether equivocal. If however his own statement of his motives is to be accepted, every possible implication of an intention to dedicate the land to the public is rebutted.

But it is said that he, and his grantee, the plaintiff, should be estopped to deny a dedication because of the public user of the land in question as a part of the street without objec-

tion on their part. Had the plaintiff or its grantor, by any unequivocal overt acts or declarations, given evidence of an intention to have the land in question included in the street, and thereby induced the public to use and the city to improve it as a part of the street, possibly the doctrine of estoppel might have been invoked. No such acts or declarations however are shown. All that is proved is mere non-action on their part, or, in other words, a mere omission to assert their title as against the public. Mere non-action will not raise an implication of an intention to dedicate private property to public use, nor will it estop the owner to deny such intention.

The court below found the issues for the plaintiff and gave judgment accordingly, and we are of the opinion that the finding and judgment are sustained by the evidence. The judgment will accordingly be affirmed.

*Judgment affirmed.*