JOHN W. PITTS

v.

ELIZABETH J. LOOBY.

*Real Property—Damages by Cutting Trees—Evidence as to Ownership of Land—Jurisdiction of Justice of the Peace—Of Appellate Court.*

1. In an action brought to recover damages to real estate by cutting trees thereon, where the defense was that the land did not belong to the plaintiff, this court holds that the evidence justified a finding by the jury in favor of plaintiff.

2. A justice may try a case for injury to real property, where the damages do not exceed $200, although the defense may set up that the plaintiff has no interest in the real property injured.

3. A freehold is not involved, within the meaning of the statute defining the jurisdiction of the Appellate Court, where the primary object of the suit is the recovery of pecuniary damages and where the suit can not result in one party's gaining and the other losing the estate.

[Opinion filed April 11, 1892.]

APPEAL from the Circuit Court of Menard County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BLANE & BLANE and L. A. WHIPP, for appellant.

Messrs. N. W. BRONSON and CHARLES NUSBAUM, for appellee.

MR. JUSTICE PLEASANTS. Appellee brought this suit against appellant before a justice of the peace for alleged injury to her real estate by cutting down and removing trees standing thereon. On appeal she obtained judgment upon a verdict for $33.20, which the court refused to set aside.

Appellant admitted the cutting and removing of the trees as charged, but denied that appellee had such possession of the *locus* as would entitle her to maintain this action. The parties respectively owned what they supposed to be adjoining tracts, which were parcels of a larger tract

including also other land formerly belonging to Wesley Whipp. Appellee claimed under a deed from him to her uncle, Robert Boyer, executed in December, 1837. In 1861, after Whipp's death, partition proceedings were instituted, in the course of which his remaining land was sold by the master in chancery to Milam Alkire, under whom appellant claimed. Appellee's tract was in the shape of a triangle, beginning at a point designated as "at a corner of William Engles', a few rods from a brook, which corner is thus described, viz.: a post, having a hickory fourteen inches diameter, bearing south eighty-five and one-half degrees east, distant thirty-one links," and running thence almost due east twenty-three and thirty-five one-hundredths chains to a post located by reference to a bearing hickory, thence a little west of south twenty chains to a post located in like manner and thence northwest to the place of beginning, containing twenty-two and sixty-nine one-hundredths acres. Appellant's tract contained three and seventy one-hundredths acres, in the form of a right-angled triangle, of which the hypothenuse was, until quite recently, understood by the parties to be the line last mentioned—the dividing line between them. A survey made by a son of Alkire in 1889, without the knowledge of appellee, put the starting point of her tract three rods further east and cut off from the southwest side, along its whole length, as previously understood, a strip of just that width. Thereupon appellant obtained from Alkire a deed of that part of this strip which was in front of his tract, and on it did the cutting complained of. This strip and the land adjoining on both sides was timber land. It is probable there was no fence between the tracts of these parties until within the period of twenty years next before this suit was brought. But as far back as 1864 one Adams, then owning the land adjoining appellant's on the south, and like his understood to be abutting on the Boyer tract, built his fence on the line now claimed by appellee; and appellant, some years after he became the owner of his, and but little less than twenty before the commencement of the suit, built his fence by a con-

tinuation of that of Adams, on the same line. Deal and
Hughes, owning next to him on the north, so fenced theirs.
All of these parties, for more than twenty years before and
until the survey in 1889, recognized this line as the true
boundary of their respective lands. They also well under-
stood that Boyer claimed the adjoining land on the other
side of it; that he claimed by virtue of a deed, and that
under that claim he cut timber for fuel, posts and rails in-
differently over the tract claimed. Perhaps it is not clear
that any was cut twenty years before the suit, on this strip,
but from appellant's own statement of his understanding it
is certain that he would not have questioned Boyer's right
if he had seen him cut every tree on it. He had himself
marked the division line between them as he understood it,
by the erection of his fence, and distinctly acquiesced in
Boyer's known claim to the land on the other side up to
that line. Boyer on his part acquiesced in that demarkation,
with full knowledge of the fence and of the line it indicated.
He and his successors claimed to that fence and disclaimed
as to all beyond it.

If this was the true line of Boyer's land, according to his
deed, then any appropriate use, openly and notoriously
made, of any part of the tract therein described, was suffi-
cient possession of the strip in dispute to support this action;
and it is not denied that from time to time for many years
up to the time of the late survey, Boyer and his successors
exclusively, openly and as proprietors, cut timber from that
tract for fuel, posts and rails. And if it was not the true
line, yet if he and appellant were adjacent owners their pos-
itive acquiescence in it as the division line would make it
such as between them and their respective privies in estate.
City of Bloomington v. Cemetery Association, 126 Ill. 221;
Fisher v. Bennehoff, 121 Ill. 437–8; Bauer v. Gottmanhau-
sen, 65 Ill. 503–4; and authorities in those cases cited.

We think there was some evidence that it was the true
line, and perhaps more that they were adjacent owners.
They themselves understood they were, claimed to be so
and acted accordingly. Why was not that sufficient, *prima*

Pitts v. Looby.

*facie*, as between them? We recall nothing in the case that would even seem to be to the contrary, except the fact that Milan Alkire, who had formerly owned the adjacent land all along the line and had conveyed to appellant the parcel he had claimed, after the late survey made to him a deed of the strip in dispute. But as against appellee that transaction was *res inter alios*, and not competent to prove that Alkire owned it. And while the survey of 1889 changed the boundary line of her land, it also entirely failed to show an intervening owner—being incomplete without further proof that the southwestern line of the Boyer tract, wherever it was, was not made the northeastern boundary of the tract previously conveyed to appellant. The abstract does not set forth that former deed nor refer to it as being in the record. If it did not describe the land thereby conveyed as being bounded on the northwest by the land of Boyer, why was it not produced? The parcels held by Adams and by Deal and Hughes, on both sides of appellant's, were included in the land conveyed to Alkire by the master, and the presumption is that he conveyed to them. They also, like appellant, supposed that according to their deeds their tracts abutted on Boyer's. Neither of those deeds was produced. If they did not so describe the lands thereby respectively conveyed, then Alkire had reserved a strip of timber between the lands of other parties, nearly half a mile in length and only three rods in width, on which he could hardly fell a tree, turn a wagon or make a road for twice its value. It does not appear that he ever exercised an act of ownership over it, nor did any witness ever hear of his making any claim to it, from the date of his deed in 1861 to that of the survey in 1889.

From all these circumstances the jury might well have believed that he conveyed to these parties respectively up to the land of Boyer.

The survey of 1889, made without the authority or knowledge of appellee, did not bind her, and was not conclusive as to the line in question; and if appellant and the other parties referred to, on one side, and Boyer on the other, were adja-

cent owners, the fencing by them, acquiesced in by him, beginning when the corner posts of Boyer's land and their bearing trees were a quarter of a century fresher than when that survey was made, was some evidence that the line thus indicated was the true line. It is said in the argument for appellant, in reply, that the surveyor claimed to have found the remains of the hickory bearing on the starting corner as described in the deed to Boyer, but the abstract contains no such statement. However that may be, we are not disposed in the face of this evidence, both as to the actual location of the line and the acquiescence in the line indicated by appellant's fence, to disturb the finding of the jury.

The instructions complained of all relate to appellee's claim by adverse possession, under the statute of limitations. On that branch of the case the evidence for plaintiff below, if any, was so slight that we have deemed it unnecessary to consider it. Both parties, however, asked and obtained instructions upon it. The exception taken to those for plaintiff is that they do not in terms require of her proof of actual possession under a claim "hostile in its inception." We think they do substantially so require. Certainly they are not inconsistent with such requirement, and it is in terms stated in each of those given for the defendant. It is further said that these instructions, particularly those numbered three, four and five respectively, assume that the strip in dispute and the land conceded to be appellee's were inseparable, and were likely to mislead the jury to apply to the former the evidence of possession of the latter. The three instructions referred to are general and abstract, informing the jury as to what constitutes adverse possession and how it may be proved, but make no application to this case. The one following, numbered six, does refer expressly to "the strip of land in question" and refers to no other. All that were asked for defendant were given as asked, except one which required "clear and affirmative proof of such facts," etc., on the part of plaintiff and from which the court struck out the words "clear and." We see no material error in the giving or modifying of instructions.

It is also assigned for error that the court overruled defendant's motion to dismiss the suit for want of jurisdiction in the justice of the peace (the appeal having been taken by plaintiff), because the question of title to real estate was raised by him. The justice's transcript, as abstracted, does not show any motion before him to dismiss the suit. It shows that he found for the defendant, who seems to have accepted the finding; and how the Circuit Court was made to know that such a question had been raised, we are not informed. But the action was for damages "for injury to plaintiff's real estate." The statute gives justices of the peace jurisdiction of such actions, without any words of limitation or exception, other than that the amount claimed shall not exceed $200 (Sec. 13, Chap. 79, Clause 2, R. S.); and upon the authority of Lachman v. Deisch, 71 Ill. 59, and Taylor v. Koshetz, 88 Ill. 479, this court has heretofore declined to interpolate any other by construction. C. & A. R. R. Co. v. Calkins, 17 Ill. App. 55; Northrup v. Smothers, 39 Ill. App. 588.

While a justice of the peace has no jurisdiction of cases involving the title to real estate, it does not follow that he may not decide a question of title if it arises in a case of which he has jurisdiction. Thus if a broker brought an action upon a simple agreement to pay him $100 on his procuring for the defendant a good title to a certain house and lot for a certain price within a certain time, and the defense set up was that the title of the proposed grantor was not good, we apprehend the justice would be fully authorized to try and determine that question so far as it might be necessary for the determination of the case before him. The statute confers jurisdiction, not by questions, but by cases, and power to try a case necessarily includes power to decide all questions properly arising in it. A justice of the peace can not try a case of which the primary object is, or may be made by either party, the establishment of title to real estate as between them—such as a case of ejectment or trespass *quare clausum*—but we think he may try a "case" for damages, for any "injury to real property," or against a rail-

road company " for injury or damage to real property caused by setting fire to the same by their engines or otherwise " (clause fourth of the section above referred to), provided the amount claimed does not exceed $200, and notwithstanding the defense set up that plaintiff has no interest in the property injured. The reason is, that in such cases no proper issue can be made upon which any proper finding and judgment would operate to establish the title in anybody or as against anybody. They are not cases of trespass *quare clausum fregit.* Taylor v. Koshetz, *supra.* In construing the statute which excepts from the jurisdiction of the Appellate Courts " cases " in which a freehold is involved, the Supreme Court say: " A freehold is never involved, within the meaning of the statute, except where the primary object of the suit is the recovery of a freehold estate, the title whereof is directly put in issue, and where the suit, if prosecuted to a final determination, will, by virtue of the judgment or decree rendered therein, as between the parties, result in one gaining and the other losing the estate." C., B. & Q. R. R. Co. v. Watson, 105 Ill. 222. Here the primary object was the recovery of pecuniary damages and no such result as above stated could possibly follow its final determination.

If we were persuaded that title was really involved, we should dismiss this appeal for want of jurisdiction in this court; but we are not, and for the reasons indicated the judgment will be affirmed.

*Judgment affirmed.*